LINDQUIST, Respondent, vs. TOWN OF BRADLEY, Appellant,
and another, Respondent.

*May 6—June 1, 1915.*

*Highways: Injury from defect: Instructions to jury: When accumula-
tion of snow has "existed for three weeks:" Object left in high-
way by individual: Liability: Appeal: Printed case: Evidence.*

1. In an action for injuries alleged to have been caused by defects in
   a highway, a charge that the law requires towns to keep their
   highways in a reasonably safe condition, and that the jury were
   to apply their experience and judgment to the existing circum-
   stances in each case and say whether the highway was reason-
   ably safe, was not erroneous either as informing the jury of the
   effect of their answers or as allowing them to base an answer on
   their own knowledge and not upon the evidence.

2. An accumulation of snow or ice upon a highway "existed for three weeks" within the meaning of sec. 1339, Stats., if it and the danger resulting therefrom existed for that time in substantially the same form and degree, though subject to those natural changes inevitable in our climate.

3. A boom-stick left upon the highway by an individual defendant, and upon which plaintiff's head struck when she was thrown from a sleigh, having had nothing to do with the unsafe condition of the highway and no proximate relation to the accident, a nonsuit as to such defendant was proper.

4. The supreme court may refuse to consider appellant's contentions based upon the evidence where, in violation of Rule 6, the printed case contains neither the evidence nor an abridgment thereof.

APPEAL from a judgment of the circuit court for Lincoln county: A. H. REID, Circuit Judge. *Affirmed.*

Highway injury. On the 9th of March, 1913, at about 9 o'clock in the evening, the plaintiff was riding in a two-horse sleigh on a north and south highway in the defendant town and was thrown out and injured. The testimony tended to prove that the sleigh tipped over by reason of the fact that there was a deep drift of snow extending from the west line of the highway and covering a large part of the traveled portion thereof, which made it necessary for teams to travel on the extreme east edge of the turnpike, thus throwing the east runner of the sleigh into a hole or depression on that side of the turnpike. There was evidence that this condition had existed for more than three weeks before the accident. There was also evidence that about two weeks before the accident some men working for the defendant *Gillette,* who were hauling boom-sticks, left a large boom-stick some thirty feet in length on the east side of the highway several feet east of the spot where the accident happened, and that the plaintiff's head struck the boom-stick when the sleigh was overturned. There was no evidence that the boom-stick had anything to do with causing the accident. *Gillette* was made a defendant because of the presence of the boom-stick at the place of the accident.

A verdict was directed in favor of the defendant *Gillette* and the following special verdict rendered on the issues between the plaintiff and the town of *Bradley,* viz.:

"(1) Was that part of the highway where plaintiff was injured reasonably safe for public travel at the time of her injury? *A.* No.

"(2) If you answer the first question 'No,' then answer this: Did the same lack of reasonable safety exist for three weeks continuously immediately before plaintiff's injury? *A.* Yes.

"(3) If you answer the first question 'No,' then answer this: Did the chairman of the defendant town know of said lack of reasonable safety at such time that by reasonable diligence he could have made said highway reasonably safe before plaintiff was injured? *A.* Yes.

"(4) If you answer the first question 'No,' then answer this: Did said lack of reasonable safety exist for such length of time that the officers of the defendant town, if they had exercised reasonable diligence, would have known of the same in time to have made said highway reasonably safe before plaintiff was injured? *A.* Yes.

"(5) If you answer the first question 'No,' then answer this: Was the same lack of reasonable safety of the highway the proximate cause of plaintiff's said injury? *A.* Yes.

"(6) Did George Henderson fail to use ordinary care in driving the team at the time of the accident and thereby proximately contribute to produce said injury? *A.* No.

"(7) What sum of money would fairly compensate the plaintiff for the said injuries which she received? *A.* $1,200."

Judgment being rendered on the verdict, the town of *Bradley* appeals.

For the appellant the cause was submitted on the brief of *G. M. Sheldon.*

For the respondent *Lindquist* there was a brief by *J. R. Pfiffner,* attorney, and *John Van Hecke,* of counsel, and oral argument by *Mr. Pfiffner.*

For the respondent *Gillette* the cause was submitted on the brief of *F. J. & A. H. Smith.*

WINSLOW, C. J.     There is really little call for an opinion in this case.     The questions of the special verdict fully and fairly covered the issues in the case, the answers were based on sufficient evidence and amply supported the judgment. The charge was fair and essentially correct.     Complaint is made because the trial judge, after telling the jury that the law requires towns to keep their highways in a reasonably safe condition for travel by night or day, said that the law did not undertake to define what constitutes a safe highway, but the jury were to apply their experience and judgment to the existing circumstances in each case and say whether the highway was reasonably safe.     It is said that this instruction informed the jury of the effect of their answers and allowed the jury to base an answer on their own knowledge and not upon the evidence in the case.     Neither objection is substantial.     It was entirely proper for the jury to know that towns are required to keep their highways in a reasonably safe condition.     Most intelligent jurymen know that fact before they go into the jury box, and they certainly know it after listening to the trial of a highway injury case.     It was also proper to say that the jury were to decide whether the highway was reasonably safe or not by applying their own judgment and experience to the existing circumstances.     It would have been a little more accurate to have said "the existing circumstances as shown by the evidence," but we have no doubt that the jury so understood the instruction.

Complaint is also made because the court charged the jury in connection with the second question that if the same unsafe condition and danger existed continuously for three weeks in substantially the same form and to the same extent and degree, then the lack of reasonable safety may be deemed continuous even though storms and drifting may have changed in some respects the physical condition or even caused the traveled track to be gradually shifted.     We find no error in this.     It would rarely be possible to point to an instance

where an accumulation of snow or ice existed for three weeks in exactly the same condition in any winter.    There will always be slight variations during such a period, and when the legislature provided that a recovery might be had for damages sustained by reason of an accumulation of snow or ice, provided the same had existed for three weeks, they must have meant that it had existed in substantially the same form and degree though subject to those natural changes inevitable in our climate which have not materially affected its dangerous character.

The boom-stick had nothing to do with the unsafe condition of the highway, had no proximate relation to the accident, and hence there was no error in directing a verdict for the defendant *Gillette.*

There are no other errors alleged which we deem worthy of specific treatment.    The appellant printed neither the evidence nor an abridgment thereof in the case, although it makes several contentions based upon the evidence, notably the contention that a verdict should have been directed for the defendant.    This is a clear violation of Rule 6 of the rules of this court.    We might on that account have refused to consider any of the questions referred to.    We have, however, examined the record·to satisfy ourselves that injustice has not been done.

*By the Court.*—Judgment affirmed, with costs in favor of the respondent *Lindquist* against the appellant town; the respondent *Gillette* to recover only the cost of printing brief against the appellant.